**COLIN M. RUBICH**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin Courthouse
2601 2nd Avenue North, Ste. 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
E-Mail: colin.rubich@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**JOHN HENRY SCHEINDER,**<br><br>Defendant. | **CR 17-77-BLG-SPW**<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

Plaintiff, United States of America, represented by Colin M. Rubich, Assistant U.S. Attorney for the District of Montana, hereby files its sentencing memorandum.

1

# INTRODUCTION

This case, and the facts that underpin it, is shocking. As shall be explained below, the defendant's conduct was extremely destructive and resulted in significant injury to many individuals. Beyond the terrible conduct, however, this case is troubling because the defendant appeared to be motivated by an astonishing level of greed and irresponsibility, particularly for a doctor.

Based on the conduct in this case and the events that led up to it, the defendant appears to be incapable of appreciating how his actions harm other people. At the same time, the defendant's conduct suggests, repeatedly, that he has no respect for the law or, at the very least, believes that it should not apply to him. Given the facts in this case and the characteristics of this defendant, the United States asks the court to sentence the defendant to 24 months of incarceration followed by three years of supervised release. This represents a guideline sentence which is sufficient but not greater than necessary to accomplish the goals of sentencing as enumerated in 18 U.S.C. § 3553.

# SUMMARY OF PLEA AND PSR

John Henry Schneider pled guilty to one count of Concealment of Bankruptcy Assets. PSR ¶ 6. The Presentence Investigation Report (PSR) has established a criminal history score of 0, which places Schneider in criminal

history category I.    PSR ¶ 40.    The PSR has calculated a total offense level of 17 and a guideline range of imprisonment for the offense of conviction of 24 to 30 months.    PSR ¶¶ 75.

## ARGUMENT

The United States respectfully recommends a sentence of 24 months incarceration, followed by three years of supervised release, and a $100 special assessment.

1. **Background and History**

To appropriately sentence this case, it is first important to understand the history that lead up to the defendant's bankruptcy.   As much as anything, the roots of this criminal case all trace back to a bizarre civil litigation that began in August of 2011 in Cody, WY. The best factual synopsis of this lawsuit is contained in an Order of Public Censure issued by the Wyoming Supreme Court against Laurence Stinson, one of Schneider's attorneys.   *Board of Professional Responsibility v. Stinson*, 337 P.3d 401 (Wyo. 2014) (Included here as Government Exhibit 1).

The lawsuit began when a Wyoming physician, Dr. Jimmy Biles, sued an Indiana woman named Lisa Fallon for disseminating defamatory statements about Dr. Biles by sending flyers to more than 14,000 Wyoming residents that made a

3

variety of false and negative claims about Dr. Biles.  *Id.* at 403.  Ms. Fallon's involvement with the flyers was odd, as she had no clear connection to Wyoming. After some investigation it was revealed that she was close with Dr. John Henry Schneider and his wife.  Schneider had, at one time, had a business relationship with Biles that had ended acrimoniously.  *Id*.

Despite these facts, Lisa Fallon insisted that she, and she alone, was responsible for sending the flyers.  She stated this in both interrogatories and at her sworn deposition.  *Id.* at 404.  During this period, a custodian at West Park County Hospital found a thumb drive in a pair of scrubs left at the hospital. The drive contained several documents that made it clear that Schneider had been directing Fallon how to respond to questions posed during her deposition. It also stated that if Fallon could withstand the questioning and "take a bullet," she did not need to worry about any financial damage that resulted from the litigation because she would be "taken care of."  *Id.* at 405.

These documents eventually led Biles to sue Schneider as well. Subsequent discovery in the case revealed more evidence, in the form of emails, that Schneider and Fallon had been colluding and that she was acting at his direction. These emails showed that Schneider had been directing Fallon's responses to interrogatories and deposition questions, that he had drafted a doctor's

4

note stating that Fallon was too sick to be deposed (Fallon was supposed to convince another Doctor to sign it), and additional promises to pay Fallon if she did as Schneider directed. *Id*. at 407.

After these documents were revealed, Schneider quickly agreed to a confidential settlement of the case. *Id*. Though we do not know the amount of the settlement, we do not how Schneider paid for it, and the source of this payment is the next link in the distressing sequence of events that led to this criminal case. Instead of having traditional malpractice insurance, Schneider had created a captive insurance company called Northern Rockies Insurance Company (NRIC) to insure him in the event of any malpractice claims against him. See Government Exhibit 2. Unfortunately, using several intermediaries, Schneider substantially depleted this company's assets to pay the confidential settlement with Biles. Id. This left NRIC without sufficient funds to pay a claim in the event Schneider was sued for malpractice, which is exactly what happened. Id.

By the end of 2014, several parties were preparing to sue or had sued Schneider for malpractice. This included a wrongful death suit—an incident that led the Wyoming Board of Medicine to revoke Schneider's license to practice medicine in Wyoming. In the face of these lawsuits and without sufficient insurance to pay any potential settlements, Schneider filed for bankruptcy.

5

Prior to this, Schneider had gone to great lengths to conceal a large amount of money from creditors and the bankruptcy trustee. All told, Schneider hid $539,736.22 in a bank account in the name of his sister that Schneider controlled. PSR ¶ 13. When the bankruptcy commenced there was still $309,686.00 in the account. PSR ¶ 17. Despite this, the defendant repeatedly lied about the account and actively concealed its existence from the trustee.

The ultimate discovery of the account was time consuming and expensive. Though the account was eventually discovered, the funds it contained never were. As a result, Schneider's actions harmed the bankruptcy process both by depriving it of assets that rightfully should have gone to creditors and by resulting in protracted and costly litigation that significantly drained the remaining assets available for distribution to creditors. Ultimately, these actions led to the indictment in this case.

**2. Sentencing Recommendation**

The conduct in this case is extremely serious. It is easy to dismiss crimes like bankruptcy fraud because the harm caused is sometimes less apparent than in cases involving more traditional crimes. Make no mistake, however, the defendant's actions hurt people. Most of the creditors in this bankruptcy were not wealthy corporations or the government. Instead they

were individuals who believed that Schneider had harmed them medically and wanted just compensation through the courts. As a result of the bankruptcy, many of those individuals were forced to settle for drastically reduced sums, and because Schneider actively hid the assets he did have, that sum became even smaller. Based on his actions, it appears as if Schneider is unable or unwilling to see how his actions affect those around him.

This conduct would be bad enough in isolation, but the events that led up to it—the Biles lawsuit, the depleted malpractice insurance—make this case truly egregious. This defendant seems to regard the law as something that does not apply to him. He has habitually shown an utter contempt for legal processes designed to serve the public and ensure justice in our community. In light of all the questionable activities that contributed to Schneider's bankruptcy, it is utterly outrageous that he would attempt to circumvent the legal process to shield his assets from legitimate creditors during bankruptcy. It is conduct that cannot be tolerated by this court or by this community and the sentence given must be sufficient to ensure future deterrence both from the defendant and others in his situation.

Though the defendant will undoubtedly request it, probation is completely inappropriate in this case. The criminal thinking errors required in

this case, from a doctor no less, are extraordinary and require a greater sentence then probation can provide. The defendant needs to understand, in no uncertain terms, that his actions do have consequences and the law applies to him the same way it does to any other defendant. If not, this defendant will continue to engage in what is clearly an ingrained pattern of behavior.

The guideline in this case is 24-30 months, and the United States sees absolutely no grounds for a departure below this range. A sentence at the low end of the guideline is absolutely reasonable given the nature of the defendant's actions and the harm that was caused. The defendant is intelligent and has had every societal advantage. He should have known better, but he did not. As such, this sentence must hold him accountable.

## CONCLUSION

A sentence of 24 months imprisonment, followed by three years of supervised release, is absolutely necessary in this case and is sufficient, but not greater than necessary.

DATED this 31st day of July, 2018.

>KURT G. ALME
>United States Attorney
>
>*/s/ Colin M. Rubich*
>Assistant U.S. Attorney