JOHN E. SMITH
COLIN M. STEPHENS
Smith & Stephens, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
john@smithstephens.com
colin@smithstephens.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HENRY SCHNEIDER,<br><br>Defendant | Cause No. CR 17-77-BLG-SPW<br><br><br>**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM** |
|---|---|

## INTRODUCTION

Defendant John Henry Schneider responds to the Government's Sentencing Memorandum. Although the Government seeks a sentence at the low end of the advisory guidelines, 24 months, the request is simply greater than necessary to accomplish the goals of § *3553(a)*. In addition to the arguments in John's sentencing memorandum, (Doc. 38), this response further demonstrates that a

sentence of probation satisfies the mandates of both §*3553,* and the volumes of post-*Booker* case law emphasizing this Court's discretion at sentencing.

In light of John's personal history and characteristics, the severity of the offense, the guidelines, sentencing trends — both nationally and in Montana — as well as the other punitive factors, a probationary sentence is appropriate. Should the Court decide a term of confinement is necessary, John requests a split-sentence to include a term of home confinement followed by a term of supervised release. U.S.S.G. §5C1.1(d) and (e)(3).

## ARGUMENT

The Government is asking this Court to impose a sentence of incarceration in this case, both to promote respect for the law and because, without such a sentence, the Government claims, John will reoffend. John has no criminal history whatsoever and in fifty-six years, he has had one encounter with the law—a misdemeanor charge over 25 years ago that was dismissed. Beyond some bizarre out-of-character behavior during a time in which he has was under great professional stress, John has otherwise been a model citizen, even exemplary.

At 56 years old, John is older than 72.1 percent of all offenders sentenced under *2B1.1* in fiscal year 2016. *See,* "Age of Offenders in Selected Primary Sentencing Guidelines (Sourcebook Age Option)[1]," U.S.S.C. 2017 Interactive Sourcebook, at https://isb.ussc.gov/content/pentaho-

cdf/RenderXCDF?solution=Sourcebook&path=&action=table_xx.xcdf&template=mantle&table_num=Table06G, (last accessed on 08/06/18). In a recently published report by the United States Sentencing Commission, the clear conclusion is that reoffense and rearrest rates decline steadily with age. *See*, U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders,* December 2017, at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last accessed 08/06/18). That study found among a group of 25,431 U.S. citizen federal offenders the overall rearrest rate for offenders 55 to 59 years of age was 22.2%. Reconviction rate was even lower at 12.2%. The reincarceration rate was 9.0%. See, report at Figures 13-15, p. 23.

Increased levels of education also point to reduced recidivism, and John's educational advancement has been significant. His college, graduate, and post-graduate education provides statistical assurance of his very low propensity to reoffend. The Sentencing Commission found the rearrest rates of college graduates between the ages of 50-59 years old was only 16.5%. At 60 years or older, it declined to 11.6%. See, U.S.S.C. report at Figure 17, p. 24. *See also*, "Education Reduces Recidivism" by Alison Hill, Loyola University, Chicago School of Law, Spring 2015, and Bureau of Justice statistics for state offenders

available at https://www.bjs.gov/index.cfm?ty=pbdetail&iid=814 (last accessed 8/4/2018).

Likewise, John's base offense level of 17 suggests he is a low risk to reoffend. The U.S.S.C. report determined 27.6% of offenders between ages 50-59 years with base offense levels between 6 and 25 reoffend. At age 60 and older, that figure reduces to 16.5%. *See*, U.S.S.C. report at Figure 20, p. 25. Finally, a criminal history category I also suggests John is a very low risk. Offenders in this category between the ages of 55 and 59 had a recidivism rate of 16.1%. That rate drops to 11.3% at higher ages. *See*, U.S.S.C. report at Figure 22, p. 25.

John's age, coupled with his education, his base offense level and his lack of any criminal history significantly reduces his risk of recidivism, thereby lessening the need for a sentence to protect the public from future crimes. He is also now well positioned, and will be better able through a supervisory sentence, to make a positive contribution to society as a volunteer for veterans organizations and a consultant to other medical practitioners.

The Government's sentencing memorandum suggests that John's offense is particularly egregious because he is a doctor. From an objective standpoint and as it relates to this Court's duty under §*3553*, John's former occupation and level of education actually favor a lower sentence. Paradoxically, the Government's argument implies this Court should impose a higher sentence on a defendant who

is statistically less likely to reoffend, based on facts that indicate he is less likely to reoffend. The reverse of the Government's argument of course is that an individual of lesser education or occupation (and thus statistically at greater risk to reoffend) should receive a lesser sentence because he simply could not have known any better. Such arguments are inconsistent with the Congressional mandates in §3553(a).

    John makes no excuse for some of his past conduct in various civil proceedings beginning in late 2011 and culminating with his crime in bankruptcy in early 2015. He asks the Court to take account of the many positive changes he has since made in his life with the strong support of his wife and children, and outlined in his Sentencing Memorandum. John's conduct, taking account of his full 56 years, bespeaks someone with respect both for the law and for others. His life up until the turmoil of the Biles/Monaco timeframe was exemplified by discipline and honor, requiring stringent adherence to rules and regulations, beginning with the scouts, order of arrow, outdoor survival, college, medical school, residency, and a distinguished military career. Throughout his career regulatory agencies and boards from the dozen different states in which he has held licensure, all have required capitulation to high moral and ethical standards. Had John been the scofflaw the Government would have us believe he would not have thrived. In fact John did thrive as a physician, in the military, and as a family man.

He should not be judged entirely on a relatively short timeframe during which he lost his way.  And when the Court weighs John's actions during that time period with his lifetime, it becomes clear that he does not exhibit any "clearly ingrained pattern" of misdeeds.

In civil court he has also been made to pay for his behavior in the case involving Mr. Biles.  In his bankruptcy he agreed to no discharge and thus opened himself up to multiple lawsuits.  Among the other punishments already endured are professional disgrace, a sealed settlement agreement, a public record accessible by any Google search of his name that will exist in perpetuity, shame, humiliation, and the great strain on his otherwise remarkable marriage to Michelle.  While the Court may consider these past proceedings, it should not compound the punishment he has already received and order a sentence in this proceeding that is "sufficient but not greater than necessary."

## **CONCLUSION**

Given the totality of evidence before this Court, the consequences attendant to conviction for a federal felony, the punishment inherent even in a probationary sentence, and the punitive impact of restitution, John requests this Court impose a sentence of five-years probation.  Should the Court decide a term of confinement is necessary, John requests a split-sentence to include a term of home confinement followed by a term of supervised release. U.S.S.G. §5C1.1(d) and (e)(3).  Either

sentence fulfills the factors set forth in § *3553(a)*, and is consistent with the statistical and academic evidence that permeates judicial sentencing.

Respectfully submitted this 7th day of August 2018.

SMITH & STEPHENS, P.C.

By: /s/ John E. Smith
*Attorney for Defendant*

# CERTIFICATE OF SERVICE

I, John E. Smith, do hereby certify that I delivered a true and correct copy of this Defendant's Response to Government's Sentencing Memorandum to the following individuals via the means indicated below.

Clerk of District Court ……………………………………………………….CM/ECF

Colin M. Rubich……………………………………………………………CM/ECF
Assistant United States Attorney

John Henry Schneider……………………………………………………….Email
Defendant

DATED this 7th day of August 2018.

SMITH & STEPHENS, P.C.

By: /s/ John E. Smith
*Attorney for Defendant*