EXHIBIT F

NRIC Medical malpractice Policy and MT certification of policy

# MONTANA STATE AUDITOR

JOHN MORRISON
STATE AUDITOR



COMMISSIONER OF INSURANCE
COMMISSIONER OF SECURITIES

June 12, 2008

Brenda M. Olson, President
ORG Captive Management
P.O. Box 510
Bigfork, MT  59911

Dear Brenda:

I am pleased to enclose a Montana Certificate of Authority for ***Northern Rockies Insurance Company LLC.*** The license permits the company to transact insurance business as a pure captive insurance company pursuant to MCA, Title 33, Chapter 28. Pursuant to Section 33-28-104, MCA, this pure captive insurance company is required to possess and maintain not less than ***$250,000*** unimpaired paid-in capital and surplus at all times.

The Certificate of Authority remains in force until suspended, revoked, or otherwise terminated. The Certificate of Authority is the property of the state of Montana and, upon expiration, suspension, or termination thereof, shall be promptly delivered to this Department.

Also enclosed is a copy of your company information recorded by this Department. Please review this carefully and notify the Department of any changes or corrections. All future mailings, premium tax forms, etc., will be sent to the mailing address indicated. A change in address must be made in writing and signed by a company officer. An additional enclosure is fraud information copied from Montana insurance law. This information is routinely included with certificates of authority issued to all companies.

Please distribute the enclosed information to the appropriate company personnel. If you have any questions, please contact any member of our Captive Team: Steve Matthews, Captive Insurance Coordinator at (406) 444-4372, Stephen Mack, Captive Insurance Examiner at (406) 444-5222, or Tal Redpath, Captive Insurance Examiner at (406) 444-0765.

Sincerely,

*Steve Matthews*

Steve Matthews
Captive Insurance Coordinator

Enclosures

Phone:  1-800-332-6148 / (406) 444-2040 / Fax: (406) 444-3497
840 Helena Ave., Helena MT 59601    Website: www.sao.mt.gov    E-Mail: stateauditor@mt.gov

63

**Montana-domiciled pure captive insurers are required to comply with the following:**

- A $300 annual license renewal fee is due each year to the Department on or before March 1st.

- A company must report to the commissioner within 30 days after any change in its executive officers or directors, including in its report a statement of the business and professional affiliations of any new executive officer or director.

- Each company must prepare and adopt a conflict of interest statement for officers, directors, and key employees. This statement must disclose that the individual does not have outside commitments, personal or otherwise, that would inhibit the individual's duty to further the interests of the company. The disclosure statements must be filed annually with the company's board of directors.

- Section 33-28-102(3)(b), MCA, requires licensed captive insurers to submit to the Department for approval, any subsequent material change to any of the items provided with the original application. Section 6.6.6810, A.R.M., further clarifies the above statute to require that a company must have prior approval of the commissioner in order to change the nature of the business stated in the company's plan of operation on file with the commissioner. Any change in other information submitted with the original application must be filed with the commissioner, but does not require prior approval of the commissioner.

- An Annual Statement must be filed with the Department on a form prescribed by the Montana Department of Insurance, submitted with a U.S. Postal Service postmark date no later than March 1st each year.

- A premium tax statement with tax remittance is due to the Department on or before March 1st. **Premium tax must be calculated on premiums written by the captive insurer for all risks in Montana and all other states combined.**

- Annual audit report must be filed with the Department within 180 days of the company's fiscal year end. The annual audit must contain the following information:

    (1) Opinion of the independent certified public accountant.
    (2) Report of evaluation of internal controls.
    (3) Accountant's letter of qualifications.
    (4) Financial statements.
    (5) Certification of loss reserves and loss expense reserves by an actuary approved by the commissioner.

No. 5282

# Office of the State Auditor
*State of Montana*
*Department of Insurance*

## CERTIFICATE OF AUTHORITY
## CAPTIVE

THIS IS TO CERTIFY that, pursuant to Title 33, Chapter 28 of the Insurance Code of the State of Montana,

**NORTHERN ROCKIES INSURANCE COMPANY LLC**

of Bigfork, MT, organized under the laws of Montana, subject to its Articles of Incorporation or other fundamental organizational documents, is hereby authorized to transact within the State of Montana, subject to the provisions of this certificate, insurance business as a **pure captive insurance company**, as now or may hereafter be defined in the Insurance Laws of the State of Montana.

This Certificate shall be effective on June 9, 2008.

This Certificate is expressly conditioned upon the holder hereof now and hereafter being in full compliance with all of the applicable laws and lawful requirements made under authority of the laws of the State of Montana as long as such laws or requirements are in effect and applicable, and as such laws and requirements now are, or may hereafter, be changed or amended.

This Certificate is at all times the property of the State of Montana and shall continue in force as long as the Company is entitled thereto under the laws of the State of Montana and until suspended or revoked or otherwise terminated, at which time the Company shall promptly deliver this Certificate to the Insurance Commissioner of the State of Montana.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal, at the State Capital, City of Helena, this 11th day of June, 2008.

*John Morrison, State Auditor and Commissioner of Insurance*

65

# NORTHERN ROCKIES INSURANCE COMPANY, LLC

### HEALTHCARE LIABILITY INSURANCE POLICY

### Part B

---
This is a non-assessable CLAIMS-MADE insurance Policy.

---

### NOTICE

**This policy is may not be subject to all of the insurance laws and regulations of your State. State insurance insolvency guaranty funds are not available for your policy.**

### CLAIMS-MADE COVERAGE NOTICE

Except to such extent as may otherwise be provided in the policy and its endorsements, the coverage of this policy is limited to liability for only those claims that are first reported in writing to Northern Rockies Insurance Company, LLC while the policy is in force.

---

**PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR LEGAL OR INSURANCE ADVISOR.**

Policy NRIC-PL1213     Northern Rockies Insurance Company LLC     Page 1 of 15
P.O. Box 510
Bigfork, MT 59911

**TABLE OF CONTENTS**

**Introduction** .................................................................................................................. 2

**Section I: Who is a Protected Party**........................................................................ 3

**Section II: What Liability is Covered** ...................................................................... 3

**Section III: When This Policy Will Respond** ........................................................... 4

**Section IV: Limits of Liability**................................................................................... 4

**Section V: Defense and Settlement**......................................................................... 5

**Section VI: Exclusions**.............................................................................................. 6

**Section VII: Definitions**............................................................................................. 9

**Section VIII: General Rules** .................................................................................... 11

**Section IX: Optional Extended Reporting Period Endorsement**......................... 13

**Introduction**

This Policy protects against liability *Claims* that arise from **your** healthcare practice, but also contains restrictions and limitations. Please read this Policy and all Endorsements carefully to determine what is and what is not covered, as well as the rights and duties of the parties under this Policy.

This Policy consists of Declarations, Insuring Agreement, Exclusions, Definitions, and General Rules, and may also contain one or more Endorsements. Endorsements change the Policy, and may be added or removed from time to time.

Terms that are printed in italics are defined in Section VII, Definitions. Terms that begin with capital letters or are printed in bold type have meanings referenced, in whole or in part, elsewhere in this Policy.

The words "**we**," "**us**," and "**our**" refer to Northern Rockies Insurance Company, LLC.

Unless specified otherwise, the words "**you**" and "**your***"* refer to each applicable Protected Party under this Policy.

The *First Named Insured* has special rights and duties that pertain to the entire Policy and to all Protected Parties covered by this Policy. Whenever this Policy makes reference to the *First Named Insured*, the *First Named Insured* has these rights and duties.

**We** provide this insurance Policy in consideration of the full payment of all premiums when due and in reliance on the truthfulness of all of the statements in **your** Application, including any Renewal Application, and any other documents submitted to **us** for purposes of obtaining, retaining, or modifying this insurance.

**Section I: Who is a Protected Party**

Each of the following is a Protected Party under this Policy:

a. The **First Named Insured**.

b. Each **Named Insured**.

c. A **Healthcare Professional**, if designated as a Protected Party in an Endorsement issued as a part of this Policy.

d. A **Locum Tenens**, but only when:

   1. acting within the scope of duties as designated by the **Healthcare Professional** for which he or she is substituting; and

   2. such **Locum Tenens'** specialty, training, licensing, and certification are equivalent to that of the **Healthcare Professional** for which he or she is substituting; and

   3. the total time of substitution for any one **Healthcare Professional**, by all of his or her **Locum Tenens**, does not exceed 30 days during this **Policy Period**; and

   4. the total time of substitution by any one **Healthcare Professional** as a **Locum Tenens**, for all Protected Parties combined does not exceed 30 days during the **Policy Period**; and

   5. **we** do not, in writing, prohibit the use of such **Locum Tenens**.

   A **Locum Tenens** is not a Protected Party for any **Claim** for which he or she has Other Insurance.

e. A **Named Insured's Employee** or **Volunteer**:

   1. who is not a **Healthcare Professional**;

   2. while acting within the course and scope of duties assigned by a **Named Insured**; and

   3. for whose acts a **Named Insured** is legally responsible.

f. Any other person or organization named as a Protected Party in an Endorsement issued as part of this Policy.

**Section II: What Liability is Covered**

a. **Part B, Coverage A – Individual Professional Liability**

   **We** will pay on behalf of each individual **Named Insured** those sums that he or she becomes legally obligated to pay as damages for **Claims** covered by this Policy:

   1. less any applicable Deductible or excess of any applicable Insured's Retention; and

   2. up to the Limits for Coverage A shown in the Declarations, or applicable Endorsement.

b. **Part B, Coverage B – Entity Professional Liability**

   If Limits of Liability are shown in the Declaration for Coverage B, this provision, b. Coverage B – Entity Professional Liability, applies.

   **We** will pay on behalf of the **First Named Insured** shown in the Declarations those sums it becomes legally obligated to pay as damages for **Claims** covered by this Policy resulting from **Review Incidents** or from **Professional Services** rendered by a Protected Party for whose acts or omissions the **First Named Insured** is legally responsible:

   1. less any applicable Deductible or excess of any applicable Insured's Retention; and

   2. up to the Limits of Liability for Coverage B show in the Declarations.

   For Protected Parties other than **Named Insureds**; **we** will pay on behalf of such a Protected Party all sums that he, she or it becomes legally obligated to pay as damages for **Claims** covered by this Policy:

   1. Less any applicable Deductible or excess of any applicable Insured's Retention; and

   2. up to the Limits of Liability of the **Named Insured** applicable to the *Claim*, as set forth in Section IV, Limits of Liability.

**Section III: When This Policy Will Respond**

*Claims* are covered under this Policy only if and when:

1. The *Claim* arises from a *Professional Services Incident* or *Review Incident* that takes place:
    i. in the *Covered Territory*; and
    ii. entirely on or after the *Retroactive Date*; and
    iii. prior to the Expiration Date or any earlier termination date of this Policy; and
2. **We** receive a *Claim Report* from **you** during the *Policy Period*.

This Policy will respond only once to a *Claim* on behalf of each Protected Party. If **we** receive a *Claim Report* during this *Policy Period*, then all subsequent related *Claims*, at any time, of any nature by anyone, are related back to and deemed part of the first *Claim* reported to **us**.

If **we** receive a *Claim Report* during this *Policy Period* from one Protected Party, this Policy will not respond on behalf of any other Protected Party unless **we** also receive a *Claim Report* from such other Protected Party during this *Policy Period*.

**Section IV: Limits of Liability**

The Limits of Liability shown in the Declarations or applicable Endorsement for each *Named Insured* are the maximum amounts **we** will pay for damages for liability covered by this Policy for that *Named Insured*, less any applicable Deductible amount or excess of any applicable Insured's Retention paid or payable by **you**. **We** pay Defense Costs and Supplemental Benefits, as described in Section V, in addition to the Limits of Liability

The *Claim* Limit and Aggregate Limit apply separately to each *Named Insured*. A separate Limit does not apply to any Protected Party who is not a *Named Insured*. Instead, any Protected Party who is not a *Named Insured* shares in the Limit of Liability of a *Named Insured*, as set forth below:

1. If Limits of Liability for Coverage B are shown in the Declarations, then sums payable on behalf of any Protected Party who is not a *Named Insured* will be shared with and paid from the Limits of Liability for Coverage B; or
2. If Limits of Liability for Coverage B are not shown in the Declarations, then sums payable on behalf of any Protected Party who is not a *Named Insured* will be shared with and paid from the Limits of Liability for Coverage A of the Individual *Named Insured* applicable to such *Claim*, as determined by **us** in **our** sole judgment.

However, a Protected Party will share in the *Claim* Limit of only one *Named Insured*.

No matter how many persons or entities allege damages arising from a *Professional Services Incident* or *Review Incident*, only one applicable Limit applies for each *Named Insured*. For example, parents and their child or children shall be deemed for all purposes to be one patient for all *Claims* relating to conception, pregnancy, birth and postpartum care.

The applicable Limit applies regardless of how many conditions affect a patient, when or how many times a patient has received diagnosis or treatment, when or how many *Claims* or causes of action have been asserted against any Protected Party by or on behalf of a patient or any other party, how many persons or entities allege damages, or how many *Suits* have been brought.

a.   **Claim Limit**

One *Claim* Limit is the maximum **we** will pay for each *Named Insured* for all injury or loss arising from any or all of the following:

1. *Professional Services Incidents* resulting from *Professional Services* for the same patient;
2. all family members, including domestic

   partners, whether or not recognized at law;

3. substantially the same course of conduct;

4. any one *Review Incident*.

b. **Aggregate Limit**

The Aggregate Limit is the maximum amount **we** will pay for all liability arising from all *Claims* covered by this Policy. A separate Aggregate Limit applies to each *Named Insured*. If Limits of Liability are shown in the Declarations for Coverage B, a separate Aggregate Limit also applies to the *First Named Insured*. The applicable Aggregate Limit applies regardless of how many persons or entities are protected by the Policy, how many *Claims* or causes of action have been asserted against any Protected Party, how many persons or entities have alleged damages, or how many *Suits* have been brought.

The Aggregate Limit of each *Named Insured* is reduced by all amounts **we** pay for liability covered with respect to that *Named Insured*.

c. **Policy Aggregate**

If a Policy Aggregate amount is shown in the Declarations, this provision, c. Policy Aggregate, applies.

The Policy Aggregate is the most **we** will pay for the sum of:

1. Liability under Coverage A – Individual Professional Liability.

2. Liability under Coverage B – Entity Professional Liability.

3. Legal Expense under any Administrative Coverage Endorsement attached to this Policy.

4. Liability under any Optional Extended Reporting Period Endorsement attached to this Policy.

The Policy Aggregate is the maximum amount **we** will pay for all liability incurred by all Protected Parties arising from all *Claims* covered by this Policy. The Policy Aggregate Limit applies regardless of how many persons or entities are protected by this Policy, how many *Claims* or causes of action have been asserted against any Protected Party, how many persons or entities have alleged damages, or how may *Suits* have been brought.

The Policy Aggregate is reduced by all amounts **we** pay for liability covered by this Policy.

---

**Section V: Defense and Settlement**

a. **Investigation and Defense**

**We** may, at **our** discretion, investigate any *Professional Services Incident* or *Review Incident.* **We** have the right and duty to defend a *Suit* brought against **you**. However, **we** have no duty to defend any *Suit* to which this insurance does not apply. In any *Suit* **we** defend, **we** will select the legal counsel to defend **you**. **You** may also choose to have **your** own legal counsel, but **we** will not pay any fees or costs related to such counsel.

b. **Defense of Certain Noncovered** *Suits*

If one or more of the following is alleged as part of a *Suit,* **we** will provide a defense, but **we** will not pay any damages for:

I. liability arising in whole or in part from *Sexual Conduct*

2. liability arising from **your** abuse of, or being under the influence of, alcohol, drugs, or any other substance;

3. liability for sanctions, fines, penalties, punitive, exemplary, or multiplied damages or attorneys fees imposed by statute or by contract; or

4. liability based upon **your** guarantee of the results of *Professional Services.*

c. **Your Consent to Settle**

1. **We** will obtain written consent from the applicable *Named Insured* before **we** settle a *Claim* against that *Named Insured* arising from *a Professional Services Incident*. Once consent is obtained, **we** may, at **our** discretion, settle any *Claim.* Each *Named Insured* agrees to waive such right to consent under the following circumstances:

   i. Judgment is entered.

  ii. The *Named Insured* is deceased or adjudicated incompetent.

  iii. The *Named Insured's* license to practice medicine is suspended, revoked, or surrendered at any time during the pendency of a *Claim* or *Suit*

  iv. The *Named Insured*, after reasonable efforts by **us**, cannot be located.

  v. The Protected Party is not a *Named Insured* on an active policy with **us** at the time of settlement.

  2. **We** have the right, without **your** consent, to settle Claims arising from *Review Incidents* and any *Claims* against any Protected Party who is not a *Named Insured*. **We** may, at **our** discretion, investigate any such Incident and settle any *Claim* that may result.

d. **When We Stop Defending**

Once the applicable *Claim* Limit, Aggregate Limit, or Policy Aggregate is exhausted by **our** payment of damages, **our** obligation to pay Supplemental Benefits or to defend any *Suit*, whether already reported to **us** or reported to **us** thereafter, will end.

e. **Supplemental Benefits**

  1. Interest on Judgments. **We** will pay any interest incurred after entry of judgment on that portion of any judgment covered under this Policy and within the applicable Limit of Liability.

  2. Court Costs. **We** will pay all necessary court costs incurred in **your** defense, but not any sanctions, fines, penalties, or attorney fees levied against **you**, such as for **your** contempt of court.

  3. Appeal Bonds. If **we** elect, at **our** sole discretion, to appeal a judgment, **we** will pay the premium for any necessary appeal bonds or release of attachment bonds. This applies only to that portion of the judgment that is covered by this Policy and within the applicable *Claim* Limit.

  4. Expenses. If **you** attend trial or arbitration at **our** request, **we** will reimburse **you**, upon **your** request, for lost wages or income, up to $500.00 per half day and $1,000.00 per full day. **We** will also reimburse **you** for reasonable expenses, other than lost wages or income, which **you** incur while participating at **our** request in **our** defense of a covered *Claim* or *Probable Claim Event*.

---

**Section VI: Exclusions**

The following Exclusions apply even if the acts or subject matter described in the Exclusions are intertwined or inseparable from the rendering of *Professional Services*.

Except as otherwise provided in this Policy, **we** will not pay any damages arising from, or defend against, any of the following:

a. Liability any Protected Party assumes under any contract. However, this Exclusion does not apply to:

  1. Liability, if otherwise covered by this Policy, that such Protected Party would have had in the absence of the contract.

  2. Liability for any Protected Party's own negligence arising out of *Professional Services* performed under a written contract with a:

   i. Health Maintenance Organization (HMO):

   ii. Preferred Provider Organization (PPO)

   iii. Independent Practice Association (IPA); or

   iv. other similar organization.

  3. Written contracts that **we** have agreed to in writing, in which **you** assume the liability of others.

2 and 3 above apply only if the contract was entered into before the *Professional Services Incident* or *Review Incident* took place.

Policy NRIC-PL1213        Northern Rockies Insurance Company LLC        Page 6 of 15
P.O. Box 510
Bigfork, MT 59911

b. Liability for any:

1. *Claim* made against **you** prior to the Effective Date of this Policy; or,

2. *Claim* or *Probable Claim Event* of which **we** or any other insurer were informed prior to the Effective Date of this Policy; or

3. act, omission, Incident, circumstance or *Probable Claim Event* that does not meet the definition of *Claim*.

c. Liability for any *Claim* arising from a *Probable Claim Event* that took place, in whole or in part before the Effective Date of this Policy.

d. Liability for any *Claim* or *Probable Claim Event* reported to **us** after the Expiration Date or any earlier termination date of this Policy, even if related *Claims* against different Protected Parties were reported to **us** during the *Policy Period*.

e. Liability arising from any *Claim* or *Suit* that includes contentions or descriptions of *Sexual Conduct* by **you** or anyone for whom **you** may be legally responsible.

f. Liability arising out of any:

1. fraudulent or malicious acts or acts intended to cause harm;

2. criminal acts;

3. violation of any statute, code, ordinance, or regulation;

4. unfair business practice or the violation of any consumer protection law, including any law that prohibits the monopolization or unlawful restraint of trade, business, or profession;

5. violation of any civil rights law;

6. disputes about **your** fees, including collecting fees from third parties.

g. Liability arising from the design, manufacture, use distribution, promotion, or sale of any non-FDA-approved medication, device, equipment, or protocols.

h. Liability arising from **your** use of or participation in any medical research or investigative protocols.

i. Liability arising from any design, manufacture, assembly, sale, trade, distribution, or promotion or any product.

j. Liability resulting from any *Professional Services* that a Protected Party renders outside of his or her specialty as listed on the Declarations or applicable Endorsement and as limited by his or her representations in any Application or Renewal Application for insurance.

k. Liability for:

1. sanctions, fines, or penalties;

2. punitive, exemplary, or multiplied damages; or

3. attorneys fees imposed by statute.

l. Liability arising from activities related to **your** employment by a federal, state, county or other governmental entity.

However, this Exclusion does not apply to acts on behalf of the *First Named Insured* if the *First Named Insured* is a governmental entity.

m. Liability arising from **your** activities as a medical director, proprietor, superintendent, executive officer, director, partner, trustee, agent, shareholder, manager, or employee of any enterprise not named as a Protected Party under this Policy.

n. Liability to **your** prospective current or former *Employees* or independent contractors, or their family members, including domestic partners, whether or not recognized by law, including but not limited to:

1. Liability under any workers' compensation, unemployment compensation, or disability benefits law, or under any similar law; or for any injury to, or sickness, disease, or death of any *Employee* arising out of the course and scope of his or her employment by **you**.

2. Liability based in whole or in part on, or arising out of: employment, failing to employ, employment demotion, termination, or discharge, or from discrimination by **you** on any basis, including but not limited to age, color, creed, gender, martial status, national origin, physical handicap, political affiliation, pregnancy, race, religious

      belief, sexual orientation, or union membership.

3. Liability based on sexual harassment.

4. Liability based on the Employment Retirement Income Security Act (ERISA) or any similar law.

o. Liability arising from **your** abuse of, or being under the influence of, alcohol, drugs, or any other substance.

p. Liability arising from **Professional Services** performed by or **Review Incidents** related to a Protected Party whose required license, certification, or license to dispense or prescribe controlled substances, is under suspension or has been restricted, revoked, surrendered, or otherwise terminated at the time **Professional Services** or **Review Incidents** take place.

q. **Claims** by a Protected Party against another Protected Party except when one party is receiving **Professional Services** as a patient.

r. Liability arising out of any Protected Party's guarantee of the results of **Professional Services**.

s. Liability arising out of the acts of any Protected Party that exceeded the course or scope of his or her duties for the **First Named Insured**.

t. Liability arising out of the acts of a **Healthcare Professional** who is not a Protected Party under this Policy.

u. Under Coverage B – Entity Professional Liability, liability arising out of the acts of a **Healthcare Professional** who was a **Named Insured** at the time of the **Professional Services Incident**, but is not a Protected Party under this Policy at the time **we** receive the applicable **Claim Report**. This Exclusion does not apply if:

1. an Extended Reporting Period Endorsement has been issued to the applicable **Healthcare Professional**; or

2. "Prior acts" or "nose" coverage has been procured by or on behalf of such **Healthcare Professional** with Limits of Liability identical to or greater than the Limits of Liability provided to such **Healthcare Professional** under this Policy.

v. Liability arising from **Professional Services Incidents** or **Review Incidents** that take place outside of the **Covered Territory**.

w. Liability for any **Claim** otherwise covered by this Policy if **you** fail to comply with any of **your** duties described in General Rules, f. **Your** Duties in the Event of a **Claim** or **Probable Claim Event.**

x. Liability arising from **Internet Medicine.**

y. Liability arising from any **Claim** or **Suit** that includes contentions or descriptions of alteration or modification of any part of the medical record by **you** or anyone for whom **you** may be legally responsible.

z. **Claims** or **Suits** resulting from the following medical or surgical procedures:

1. any induced pregnancy termination in any clinical setting which does not include a full preoperative evaluation of the patient and in which **you** do not have a continuing responsibility for the postoperative management of the patient;

2. any administration of anesthesia other than local anesthesia or intravenous analgesia unless **you** are listed on the Declarations or applicable Endorsement as an anesthesiologist or maxillofacial surgeon with anesthesia training;

3. any use of sedation or anesthesia unless all of the following devices are used:

   a. continuous blood pressure monitoring by automatic monitor or by use of a manual blood pressure cuff with recorded readings made at least every five minutes;

   b. continuous electrocardiographic display on appropriate patients;

   c. continuous peripheral blood flow monitoring (pulse monitor);

   d. continuous monitoring of respiration; and

   e. continuous monitoring with a pulse oximeter;

4. any procedure, coverage or other treatment rendered by a lay-midwife or nurse-midwife;

5. any induced pregnancy termination beyond thirteen completed weeks from the

first day of the last normal menstrual period. If the menstrual history is in question, this Exclusion shall apply to any pregnancy beyond thirteen completed weeks by ultrasound measurement.

   This exclusion shall not apply to:

a. fetal demise;

b. documented fetal abnormalities; or,

c. documented life-threatening maternal disease;

6. any weight reducing (bariatric) surgery;

7. Attendance at or supervision of labor and/or delivery in any place other than a licensed acute care hospital or licensed birthing center, except in cases of medical emergency; or,

8 Performance of suction assisted lipectomy.

---

**Section VII: Definitions**

a. ***Claim*** means a written demand for payment of damages or for services, or ***Suit*** seeking damages, arising from a ***Professional Services Incident*** or ***Review Incident*** that is not otherwise excluded by the terms and conditions of this Policy.

b. ***Claim Report*** means ***your*** written communication received at ***our*** offices that notifies ***us*** of ***your*** receipt of a ***Claim*** made against ***you*** by or on behalf of a party alleging injury of damages.

c. ***Covered Territory*** means the state or territory of the United States for which:

   1. ***you*** are licensed to practice medicine; and

   2. ***you*** have advised ***us*** in writing that ***you*** practice medicine.

d. ***Employee*** means a person other than a ***Volunteer***:

   1. whose services or labor is supervised by ***you***; and

   2. who is on the payroll of the ***First Named Insured*** and subject to the withholding of taxes, whether working on a full- or part-time basis.

e. ***First Named Insured*** means the person or Entity designated as the ***First Named Insured*** on the Declarations or in an Endorsement issued as part of this Policy.

f. ***Healthcare Professional*** means an individual who is duly licensed to practice under one or more of the following licenses: Medical Doctor (MD); Doctor of Osteopathy (DO); Doctor of Dental Surgery (DDS); Doctor of Dental Medicine (DMD); Doctor of Podiatric Medicine (DPM); Doctor of Chiropractic (DC); Nurse Practitioner (NP); Physician Assistant (PA); Surgeon Assistant (SA); or Doctor of Optometry (OD).

g. ***Internet Medicine*** means the diagnosis, treatment, care, or consultation, regarding a patient's medical condition provided by ***you*** through the ***us***e of the Internet or other electronic media system to a patient at a distant site who was not seen by a ***Healthcare Professional*** covered by this Policy in a face-to-face, in-person visit that took place before the internet or other electronic communication.

   This does not include electronic communication or consultation with another ***Healthcare Professional,*** provided that such ***Healthcare Professional***:

   1. is in the ***Covered Territory***; and

   2. has seen the patient in the ***Covered Territory*** in a face-to-face, in person visit that took place before the Internet or other electronic communication.

h. ***Locum Tenens*** means a temporary, substitute ***Healthcare Professional*** who ***you*** have designated in advance to provide ***Professional Services,*** for specific dates of substitution, for a specific Protected Party.

   ***Locum Tenens*** does not include a ***Healthcare Professional*** providing ***Professional Services*** concurrently with the Protected Party for whom such ***Locum Tenens*** is serving.

i. ***Named Insured*** means each person or organization listed as a ***Named Insured*** in the Declarations or in an Endorsement issued as part of this Policy. ***Named Insured*** also includes the ***First Named Insured***.

j. ***Policy Period*** means the period of time stated in the Declarations, beginning with the Effective Date and ending with the Expiration Date, or any earlier date of actual termination. The ***Policy Period*** does not include any Extended Reporting Period. If **you** become a Protected Party under this Policy after the Effective Date shown in the Declarations, then the ***Policy Period*** begins on the date **you** become a Protected Party.

k. ***Probable Claim Event*** means a ***Professional Services incident*** or ***Review Incident*** that **you** knew or believed, or by diligent inquiry had, or would have had, a reasonable basis to know or believe, may give rise to a ***Claim.***

l. ***Professional Services*** means the diagnosis, treatment, care, or consultation, regarding a patient's medical condition. ***Professional Services*** includes rendering or failing to render emergency medical treatment in good faith and without compensation or the expectation of compensation.

m. ***Professional Services Incident*** means the performance of or failure to perform ***Professional Services*** in the ***Covered Territory*** to a patient in the ***Covered Territory*** by :

1. a ***Healthcare Professional,*** when acting within the scope of his or her specialty and training; or

2. an ***Employee*** or ***Volunteer***;
   i. who is not a ***Healthcare Professional***;
   ii. when acting within the scope of his or her training and licensing; and
   iii. within the course and scope of duties for a ***Named Insured***; and
   iv. for whose acts the ***Named Insured*** is legally responsible.

   ***Professional Services Incident*** includes expenses or liabilities arising out of any actions taken by any state licensing agency or medical review board.

n. ***Retroactive Date*** means the date stated in the Declarations or in an Endorsement issued as part of this Policy.

o. ***Review Incident*** means performance of any of the following in the ***Covered Territory*** by a ***Named Insured*** or by any Protected Party acting on behalf of a ***Named Insured***:

1. peer review or quality assurance;

2. utilization review on behalf of the ***Named Insured's*** patients or patients of other members of the ***First Named Insured***; or

3. utilization review on behalf of a state or county medical society.

   All damages arising from the same ***Review Incident,*** including the same general conditions or related set or series of circumstances, shall be deemed as caused by the same ***Review Incident***.

   ***Review Incident*** does includes expenses or liabilities arising out of any actions taken by any state licensing agency or medical review board.

p. ***Sexual Conduct*** means sexually suggestive contact or activity, engaging in or soliciting sexual relations, sexual abuse, sexual assault, sexual battery, sexual intimacy, sexual exploitation, sexual harassment, sexual self-gratification, or any acts punishable as a sexually related crime, whether under the guise of ***Professional Services*** or not.

q. ***Suit*** means a civil proceeding that seeks damages which, if awarded, would be covered by this Policy. ***Suit*** includes:

1. an arbitration proceeding in which such damages are claimed and to which **you** must submit or do submit with **our** written consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** must submit or do submit with **our** written consent; or

3. a pre-suit, screening panel, or similar proceeding mandated by laws within the ***Covered Territory***.

r. ***Volunteer*** means any person other than an ***Employee***, whose services or labor are uncompensated from any source and is accepted or directed by the ***First Named Insured***.

**Section VIII: General Rules**

These rules apply to the entire Policy. The obligations described in the rules apply to each Protected Party, except where the rule specifies otherwise. If any Protected Party materially fails to comply with his, her, or its obligations under the Policy, **our** obligations to such Protected Party will terminate. Such obligations may include **our** duty to defend, indemnify, prosecute, or continue litigation. **Your** failure may also result in cancellation or nonrenewal of this Policy.

   a.   **Your Premium**

The *First Named Insured* is responsible for paying all premiums for all Protected Parties.

**Your** premium is due on or before the Effective Date. If payment is not received by **us** on or before the Effective Date, **your** Policy will lapse and no coverage will be in effect.

If there has been a substantial change in risk, and **we** have agreed in writing to accept such change, then **we** have the right to adjust **your** premium.

If **we** base **your** premium on estimated information, **we** have the right to adjust **your** premium once **we** review the actual information. If that final premium is higher that the estimated premium, **you** will owe **us** the difference; if lower, **we** will credit the difference to **you**.

   b.   **Your Affirmative Duty to Report Changes**

If any *Named Insured's* scope of healthcare practice, locations, or business operations change, **you** must inform **us** in writing immediately of any changes.

For example, **you** must inform **us** of any of the following:

   1. if **you** change **your** specialty;
   2. if **you** intend to perform any procedures other than those **you** indicated on **your** Application or latest Renewal Application;
   3. if **you** add or change professional or business office locations;
   4. if any *Healthcare Professional's* licensing status or privileges are restricted or limited in any way;
   5. if **you** intend to add a *Healthcare Professional* to **your** practice;
   6. if any Protected Person enters, leaves, or is discharged from a diversion or rehabilitation program;
   7. if any Protected Party undergoes treatment, or is advised by a physician, peer review committee, hospital credentialing committee or licensing agency to undergo treatment for alcohol, drug or other substance abuse, or for psychiatric illness; or
   8. if any Protected Party is being investigated, formally or informally, by any state licensing agency or healthcare review board.

   c.   **Policy Changes**

Any Policy changes **you** request must be submitted to **us** in writing in advance by the *First Named Insured*. No changes are effective until **we** agree and have issued an Endorsement or new Declarations reflecting such changes.

   d.   **Our Right to Inspect and Audit**

**You** agree to let **us** or **our** representatives inspect **your** operations, books, records, office and equipment during normal business hours during this *Policy Period* and up to three years after expiration of this *Policy Period*. **We** are not required to make inspection. If **we** do, such an inspection does not constitute a guarantee that **your** offices, premises or operations are safe or that they are in compliance with any applicable laws, rules or regulations.

   e.   **Assignments and Transfers**

**You** may not assign or transfer any right or interest in this Policy without **our** prior written consent. If a *Named Insured* covered under this Policy dies during the *Policy Period*, however, his or her estate will be insured as described in Section IX, Optional Extended Reporting Period Endorsement.

   f.   **Your Duties in the Event of a *Claim* or *Probable Claim Event***

**You** have the following duties:

If a *Claim* is made against **you**, or a *Probable Claim Event* has occurred, it is **your** duty to:

   1. Immediately notify **us** by phone or other verbal communication and forward to **us** every demand, notice or intent to sue, *Suit*, or other document **you** or **your** representative receive relating to the *Claim*

or **Probable Claim Event**.

2. Promptly provide written details concerning the **Claim** or **Probable Claim Event** including the date, time, place, parties involved, identity of the injured party or parties, and identities of all witnesses.

   If the **Claim** or **Probable Claim Event** results from a **Locum Tenens**, **you** must provide **us** with the names and dates of substitution for all **Locum Tenens** serving in **your** place during the **Policy Period** in which the events giving rise to the **Claim** or **Probable Claim Event** occurred. **You** must also provide **your** records that document this information, such as tax and financial records.

3. Cooperate with **us** in the investigation, defense, or settlement of any **Claim** or **Suit** or in the Investigation of any **Probable Claim Event**. This includes submitting to unsworn statements and examinations under oath and promptly producing all records in **your** care, custody, or control relating to the claimant or patient.

4. Refrain from making any offer or payment, assuming any obligation, or incurring any expense relating to the **Claim** or **Probable Claim Event** without **our** prior written consent; and

5. Refrain from:

   i. omitting, misrepresenting, or concealing facts pertinent to any **Claim** or **Probable Claim Event**; and

   ii. altering, or directing others to alter, any patient or business records pertinent to any **Claim** or **Probable Claim Event** (whether changing, clarifying, updating, completing, or destroying), except for bona fide corrections made in accordance with professional standards, such as maintaining the original unchanged and dating and initialing the correction

A report to **us** of a **Claim** or **Probable Claim Event** by or on behalf of one or more Protected Parties is not a report or on behalf of any other Protected Party.

**Your** Deductible or Insured's Retention obligations, if any, do not alter **your** obligations to report **Claims** or **Probable Claim Events** to **us**.

g. **Consent to Special Verdict**

If **Suit** is brought on a **Claim**, and if so advised by counsel defending **you** in that **Suit**, it is **your** duty to consent to the submission of special verdict forms or other written inquiries to the trier of fact for purpose of determining the basis of **your** liability, if any, and for use in the determination of damages.

h. **Allocation of Losses**

**We** have the right to allocate damages between Protected Parties, whether covered by this Policy or any other Policy issued by **us**.

I. **Recovering from a Third Party**

If a **Claim** covered under this Policy involves an amount that **you** may legally recover from some other party, **we** have the right to seek recovery from that other party. Both before and after **we** make payment on any such **Claim**, **you** must do all that is reasonably possible to preserve any such right of recovery. Any such recovery **we** make will be distributed in the following order:

1. to the expenses of making the recovery;

2. to **you**, to the extent that **you** have paid any amount, other than **your** Deductible or Insured's Retention obligation;

3. to **us**, to the extent that **we** have paid damages and Defense Costs;

4. to **you**, to the extent that **you** have paid any Deductible or Insured's Retention obligation under this Policy.

j. **Cancellation or Nonrenewal**

1. **Cancellation By the First Named Insured**

   The **First Named Insured** may cancel this policy or coverage for any Protected Party, at any time by sending advance written notice to **us** stating when thereafter such cancellation shall be effective. **We** will return any unearned premiums to the **First Named Insured**, less a short rate fee. However, the Policy cancellation will still be effective even if **you** have not yet received any such return premium due **you**.

2. **Cancellation By Us**

   **We** may cancel this Policy:

   i. upon 10 days written notice for

nonpayment of premium when due; or

ii. upon 60 days written notice for nonpayment of Deductible or Insureds' Retention amount when due; or

iii. upon 60 days notice for any other reason as allowed by state law.

3. **Nonrenewal or Conditional Renewal**

   Neither the *First Named Insured* nor **we** have any obligation to renew this Policy. Any renewal will be on the policy forms and endorsements then in effect. If **we** elect not to renew this Policy or coverage of any Protected Party, or intend to offer renewal with reduced coverage, we will provide 60 days written notice.

**Our** written notice will be mailed to the *First Named Insured* and shall be deemed as proper notice to all Protected Parties under this Policy. If **we** cancel, **we** will return any unearned premium to the *First Named Insured* on a pro rata basis.

**Your** insolvency or bankruptcy does not preclude **us** from asserting **our** rights to effect cancellation or nonrenewal.

**k. Other Insurance**

If **you** have any Other Insurance, whether primary, excess, umbrella, or otherwise, that provides coverage, in whole or in part, for damages or expenses that are also covered by this Policy, the following will apply:

**You** agree that the Other Insurance must pay first and that this Policy will apply only as excess. This Policy will not contribute with such Other Insurance toward payment of such damages or expenses on a pro rata or any other basis. This provision, however, does not apply to Other Insurance, of which **you** have notified **us** in writing, which specifically schedules this Policy to be underlying insurance.

Other insurance includes any valid and collectible insurance, self-insurance, self-insured retention, self-insured trust, or risk transfer instrument of any kind, other than this Policy, that provides defense or indemnity to any Protected Party for any *Claim*, *Suit*, loss, liability, or damages covered, in full or in part, by this Policy.

**l. Bankruptcy/Insolvency**

The insolvency or bankruptcy of a Protected Party will not release **us** from **our** obligation to pay damages under the terms of this Policy

---

**Section IX: Optional Extended Reporting Period Endorsement**

If **you** or **we** terminate this Policy or **your** coverage under this Policy, each *Named Insured* will have the right to purchase an Extended Reporting Period Endorsement for an additional premium. Such an Endorsement provides an additional reporting period during which **we** will accept *Claim Reports* that arise from Incidents that take place entirely on or after the *Retroactive Dale* and prior to the Expiration Date or any earlier termination date of this Policy.

However, **you** are not eligible to purchase an Optional Extended Reporting Period Endorsement unless all premiums have been paid for this Policy and all Deductible and Insured's Retention amounts have been paid.

**Your** right to purchase this Optional Extended Reporting Period Endorsement will terminate unless **you** give **us** written notice of **your** intent to purchase it and pay all premiums required for the Endorsement within 30 days alter the termination date of this Policy.

With respect to any *Claim* or *Probable Claim Event* reported under an Extended Reporting Period Endorsement, **we** may, at **our** discretion, investigate any incident and settle any *Claim* that may result. **Your** consent is not required.

If an Individual *Named Insured* permanently retires from the practice of medicine at age 55 or older and on the date his or her retirement commenced had

been continuously insured by **us** for the prior 5 years, **we** will, in accordance with **our** rules at the time of the retirement or disability, waive the premium for the Extended Reporting Period Endorsement. If such retirement later ends, the premium for the Extended Reporting Period Endorsement is reinstated and due in full.

If an Individual ***Named Insured*** becomes totally and permanently disabled and on the date his or her disability commenced had been continuously insured by **us** for the prior 5 years, **we** will, in accordance with **our** rules at the time of the retirement or disability, waive the premium for the Extended Reporting Period Endorsement. If such disability later ends, the premium for the Extended Reporting Period Endorsement is reinstated and due in full.

If a ***Named Insured*** dies during this ***Policy Period,*** **we** will issue an Extended Reporting Period Endorsement to his or her estate without charge.

In witness whereof, **we** have caused this Policy to be signed by **our** Authorized Representative.

_____
*******

Authorized Representative